KIMBERLY–CLARK CORPORATION,
Plaintiff–Appellant,

v.

TYCO INTERNATIONAL (US), INC., the Kendall Company, Inbrand Corporation and Confab, Inc., Defendants–Appellees.

No. 00–1080.

United States Court of Appeals,
Federal Circuit.

Feb. 20, 2001.

Rehearing and Rehearing en banc
Denied April 20, 2001.

Before MICHEL, LOURIE, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Kimberly–Clark Corporation owns three U.S. patents directed to diapers with elasticized side pockets, U.S. Patent Nos. 4,704,116 (Enloe I), 5,415,644 (Enloe II), and 5,599,338 (Enloe III). Kimberly–Clark brought suit against Tyco International (US), Inc., the Kendall Company, Inbrand Corporation, and Confab, Inc., (collectively, Tyco) in the United States District Court for the Western District of Wisconsin, asserting infringement of all three patents. After the district court construed the claims, the parties advised the court that under the court's claim construction Tyco did not infringe. The court therefore entered judgment in favor of Tyco, and Kimberly–Clark appealed. Because the district court correctly construed the claims in all three patents to be limited to "fluid pervious flaps," we *affirm.*

## BACKGROUND

All three Enloe patents describe an improved design for disposable diapers. Disposable diapers typically include a backsheet, a bodyside liner, and an absorbent body or pad disposed between the backsheet and the bodyside liner. Enloe I, col. 4, II. 31–34. The bodyside liner is made of a liquid pervious material, while the backsheet is made of a liquid impervious material. Enloe I, col. 4, II. 34–36. Enloe proposed adding a pair of flaps attached to or formed from the bodyside liner. These inner flaps form pockets into which solid fecal material collects and is contained. Enloe I, col. 4, II. 63–64. They may also serve to strain fluidic fecal material, allowing the liquid portions to be absorbed by the absorbent body or pad. Enloe I, col. 4, II. 65–68. The inner flaps, 30 and 32, are shown in Figure 2, a cross-sectional view of the improved diaper:

FIG. 2

The present dispute concerns the material of the inner flaps. In Enloe's original patent application, the inner flaps could be made from either fluid pervious or fluid impervious material. The written description provided that the "flap material is preferably soft, comfortable and vapor and/or fluid permeable," but did not otherwise limit Enloe's claims. Independent claim 1 generally recited "[a] unitary diaper having ... two flaps extending toward each end," while dependent claim 2 recited

the "diaper of Claim 1 wherein the flap is fluid permeable." Those claims and others were rejected by the examiner as anticipated by a United States patent to Beckestrom. Rather than challenge the rejection, Enloe abandoned his original application and filed a continuation-in-part.

In the continuation-in-part, Enloe revised the written description to distinguish the Beckestrom reference on the ground that the prior art flaps–unlike his flaps– were fluid impervious or waterproof:

> However, these attempts [by Beckestrom] to solve one problem have resulted in the emergence of other problems. For example, the elasticized flaps can cause the *waterproof material of the flaps* to provide a tight seal at the thigh crease because the tensioned elastic presses the easily deformable flaps into close contact with the skin. The *waterproof material of the flaps* can then cause urine or moisture and even liquid fece material to collect next to the skin and cause skin irritation.

> The present application teaches an improved disposable garment which provides *fluid pervious flaps* to enhance the containment and absorption of urine and other fluid exudates as well as solid exudates. The *flaps, made up of water pervious material,* slows [sic] the sideways flow of solid material. Furthermore, the flaps enhance skin dryness by causing at least one extra layer of material to be disposed between the absorbent area of the diaper and the skin of the wearer. This, in addition to having fecal material separated from the skin by at least one layer of flap material, decreases the potential of skin irritation.

The revised written description further provided (consistent with the original application) that the "preferred material for flaps 30, 32 is a liquid pervious material." Enloe's new claims were also explicitly limited to "fluid pervious flaps." This continuation-in-part became Enloe I.

Claim 1 of Enloe I specifies a fluid pervious material:

1. An absorbent garment comprising:

   a back sheet;

   a liquid pervious bodyside liner, essentially coterminous with said back sheet, defining front and back waist sections and opposed front and second sides connecting said waist sections, including a pair of leg sections delimited along said sides, each of said leg sections having a tensioned elastic member disposed between said liner and back sheet; and

   first and second elasticized *fluid pervious flaps,* attached to or formed from said bodyside liner and spaced inwardly of said leg elastic members, respectively, defining a waste containment pocket.

Enloe I, cl. 1 (emphasis added). In allowing this and other Enloe I claims, the examiner noted that the "necessity of a fluid permeable flap" in combination with elastic in the flap and at the leg openings "overcomes the prior art."

The written description for Enloe I became the basis for both Enloe II and Enloe III. In particular, Enloe continued to include in the written description the same language from Enloe I that distinguished Beckestrom on the ground that Beckestrom's prior art flaps were fluid impervious. *See* Enloe II, col. 2, ll. 38–59; Enloe III, col. 2, ll. 35–54. During the prosecution of Enloe II and Enloe III, Enloe never sought to remove or amend that language, nor to traverse, appeal, or submit arguments seeking to overcome the initial rejection on other grounds.

The allowed claims of Enloe II and Enloe III–unlike those of Enloe I–do not explicitly recite a "fluid pervious" limitation. Although Enloe initially included such a limitation in the Enloe II applica-

tion claims, he later amended those claims to remove the "fluid pervious" limitation. That amendment was made after the PTO declared an interference with a United States patent to Lawson. At that time, Enloe amended his claims to copy those of the Lawson patent, which had the effect of omitting the explicit "fluid pervious" limitation from his claims. Despite the seemingly broad language of the amended claims and the interference count, however, the PTO did not designate claims in the Lawson patent that were specifically directed to fluid impervious flaps as corresponding to the count. Enloe challenged that determination, filing a motion to amend the count to add the fluid impervious claims from Lawson. The Board of Patent Appeals and Interferences denied Enloe's motion, finding that those claims were not anticipated by the count and that Enloe had failed to show that they were obvious in view of the count. Enloe prevailed in the interference and continued to prosecute the claims in their amended form.

## DISCUSSION

■ A. Kimberly–Clark does not dispute that the claims of Enloe I are limited to fluid pervious flaps, but contends that the claims of Enloe II and Enloe III are not subject to that limitation. Although the specifications of Enloe II and Enloe III are identical to the specification of Enloe I in pertinent part, each referring to the flaps as fluid pervious, Kimberly–Clark asserts that the specifications of Enloe II and Enloe III should not be interpreted to limit the broad language of the claims of those patents, which are not expressly limited to fluid pervious flaps.

We agree with the district court that the specifications of Enloe II and Enloe III clearly disclaim fluid impervious flaps, and that the asserted claims of Enloe II and

Enloe III must be read to give effect to that disclaimer. Enloe chose to distinguish the prior art Beckestrom reference in each specification by noting the inadequacies of fluid impervious flaps and touting the advantages of fluid pervious flaps. The specifications unambiguously state that "[t]he present application teaches an improved disposable garment which provides fluid pervious flaps." That language from the specifications provides strong support for the district court's conclusion that the asserted claims of Enloe II and Enloe III must be read as limited to fluid pervious flaps. *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159, 47 USPQ2d 1829, 1833 (Fed.Cir.1998) (written description did not support claim covering conical and non-conical shaped cups where the specification "specifically distinguishes the prior art [non-conical shape cups] as inferior and touts the advantages of the conical shape of the [patented cup]"); *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1581, 42 USPQ2d 1777, 1781 (Fed.Cir.1997) (limiting means-plus-function claim to non-smooth or conical passage structures where the specification "expressly distinguishes over prior art passages by stating that those passages are generally smooth-walled").

Although Kimberly–Clark seeks to draw support from a statement in each of the specifications that the "preferred material for the flaps . . . is a liquid pervious material," that statement does not justify the conclusion that the asserted claims must be read to cover both fluid pervious and fluid impervious flaps. That statement appears to be derived from a similar statement in Enloe's original parent application, which referred to the flap material as "preferably . . . fluid permeable," even though the claims of that application were not limited to fluid pervious flaps. The reference to the preferred material of the

flaps being liquid pervious was carried over, perhaps by mistake, in the application that became Enloe I, even though the claims of that application were all expressly limited to fluid pervious flaps. Because that statement, when made in the Enloe I specification, plainly did not mean that the claims of that patent should be read to include fluid pervious flaps, it cannot reasonably be read to have assumed a different meaning when it was carried over into the specifications of Enloe II and Enloe III. *See Abtox, Inc. v. Exitron Corp.,* 131 F.3d 1009, 1010 (Fed.Cir.), *modifying* 122 F.3d 1019, 43 USPQ2d 1545 (Fed.Cir.1997) (improper to construe the same term in related patents differently); *Jonsson v. Stanley Works,* 903 F.2d 812, 818, 14 USPQ2d 1863, 1869 (Fed.Cir.1990) (construction of the same term in related patent relevant to an understanding of that term in patent at issue). We therefore agree with the district court that the specifications of the three patents do not support Kimberly–Clark's assertion that Enloe's invention included diapers with fluid impervious as well as fluid pervious flaps.

The prosecution history is consistent with the claim construction adopted by the district court. After narrowing his claims in Enloe I to fluid pervious flaps and including the language distinguishing Beckestrom on that ground in his specification, Enloe retained the language distinguishing Beckestrom in the specifications of Enloe II and Enloe III and did not raise the "fluid pervious" issue again during the prosecution of any of the three patents. Although Enloe originally specified "fluid pervious" flaps in the application that became Enloe II, he deleted the reference in the claims to "fluid pervious" flaps at the time of the interference in order to copy the claims of the Lawson patent. There is no suggestion in the prosecution history that the deletion of that language had the effect of recapturing fluid impervious flaps.

Indeed, the exclusion of Lawson's fluid impervious claims from the interference, and the denial of Enloe's motion seeking to add those claims, indicates that the examiner and the Board of Patent Appeals and Interferences understood that Enloe had disclaimed fluid impervious flaps notwithstanding the omission of the express references to fluid pervious flaps.

Finally, invoking the doctrine of claim differentiation, Kimberly–Clark argues that claim 1 of Enloe II should be read to include fluid impervious flaps because claim 26 of Enloe II, unlike claim 1, is expressly limited to fluid pervious flaps. Claim 26 requires that the flaps, "when placed in contact with wet skin of a wearer, permit[ ] moisture to escape from the surface of the skin so contacted." While it is not clear that this limitation is equivalent to fluid perviousness, the doctrine of claim differentiation cannot in any event alter a definition that is otherwise clear from the claim language, the written description, and the prosecution history. *O.I. Corp.,* 115 F.3d at 1582, 42 USPQ2d at 1781; *see also Tandon Corp. v. U.S. Int'l Trade Comm'n,* 831 F.2d 1017, 1024, 4 USPQ2d 1283, 1288 (Fed.Cir.1987) ("Whether or not claims differ from each other, one can not interpret a claim to be broader than what is contained in the specification and claims as filed.").

Enloe II and Enloe III cannot be correctly construed to cover what was expressly disclaimed. *See Cultor Corp. v. A.E. Staley Mfg. Co.,* 224 F.3d 1328, 1331, 56 USPQ2d 1208, 1210 (Fed.Cir.2000). Therefore, the district court correctly limited all three patents to fluid pervious flaps.

■ **B.** The district court further construed "fluid pervious" to mean "pervious without pressure." While the term "pervious" is not defined in the specification,

Enloe set out a meaning for that term during prosecution: "open to passage or entrance; permeable." Enloe further defined "impervious" to mean the opposite: "not open to passage or entrance, or impermeable." Such a general definition is not particularly helpful because any material, under sufficient pressure, will become pervious. The specification, however, provides that both the bodyside liner and the flaps are fluid pervious and that the flaps may be made from the same material as the bodyside liner or an alternative fluid pervious material. Enloe I, col. 4, II. 55–60; Enloe II, col. 5, II. 31–35; Enloe III, col. 5, II. 19–23. Neither the specification nor the prosecution history draws any distinction between the way the term "pervious" is used in relation to the flaps and the way the same term is used in relation to the bodyside liner.

Although Kimberly–Clark admits that the bodyside liner must be pervious without pressure, it argues that the inner flaps may be regarded as pervious as long as they are pervious under pressures of up to six pounds per square inch. Because the inner flaps are allegedly subject to greater pressure than the bodyside liner during normal use, Kimberly–Clark argues that a lesser degree of perviousness is required to render them "fluid pervious" for purposes of the Enloe patents. In support of its theory, Kimberly–Clark offers a "normal use" pressure measurement test that is not disclosed in the specification or the prosecution history, is not used in the industry, and, according to the district court, was "concocted solely for purposes of this litigation."

If Enloe intended to define the term "fluid pervious" in the manner that Kimberly–Clark now asserts, he should have defined the term in that way in the patents. Instead, he offered a dictionary definition consistent with the way the evidence showed the term is used in the industry to refer to fluid pervious bodyside liners–pervious without pressure. Enloe did not give notice that "fluid pervious" may mean something entirely different when used in reference to the inner flaps, and he even suggested that the inner flaps can be made from exactly the same material as the fluid pervious bodyside liner, which strongly suggests that the term "fluid pervious" was being used in the same way for both structures.

The public notice function of patents is defeated if a patentee can subsequently and substantially alter the meaning of his claims by a post-hoc, litigation-driven "definition" unsupported by the specification. See Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys., 132 F.3d 701, 706, 45 USPQ2d 1033, 1038 (Fed.Cir. 1997) ("Once a dispute over claim construction arises, 'experts' should ... not be heard to inject a new meaning into terms that is inconsistent with what the inventor set forth in his or her patent and communicated, first to the patent examiner and ultimately to the public."). Absent some indication to the contrary, the term fluid pervious should therefore be accorded a consistent meaning throughout the specification. See Pitney Bowes, Inc. v. Hewlett–Packard Co., 182 F.3d 1298, 1310, 51 USPQ2d 1161, 1169 (Fed.Cir.1999) (holding that, as a general principle, the same word appearing in the same claim should be interpreted consistently absent a different definition). Because the Enloe patents do not distinguish between the bodyside liner and the flaps with respect to the feature of fluid perviousness, and because the bodyside liner is considered fluid pervious if it is fluid pervious without pressure, the inner flaps must be considered fluid pervious under the same conditions.

Kimberly–Clark has acknowledged that the accused diapers do not infringe if the fluid pervious limitation applies to the Enloe II and Enloe III patents and if fluid pervious means pervious without pressure. We therefore uphold the district court's judgment of non-infringement. In light of our ruling, it is unnecessary for us to reach the additional claim construction issue that the district court addressed and Kimberly–Clark challenged on appeal.