**IGC–MEDICAL ADVANCES INC.,**
**Plaintiff–Appellant,**

v.

**USA INSTRUMENTS, INC.,**
**Defendant–Appellee.**

No. 01–1429.

United States Court of Appeals,
Federal Circuit.

April 16, 2002.

716

Before MAYER, Chief Judge, LINN, and PROST, Circuit Judges.

PROST, Circuit Judge.

IGC–Medical Advances, Inc. ("IGC") appeals from the decision of the United States District Court for the Western District of Wisconsin denying IGC's motion for summary judgment and granting summary judgment of noninfringement in favor of defendant USA Instruments, Inc. ("USAI"). *IGC–Med. Advances, Inc. v. USA Instruments, Inc.*, No. 00–C–579–S, slip op. at 16 (W.D.Wis. May 23, 2001) (*"IGC–Medical"*). Because the district court did not err in concluding that there were no genuine issues of material fact and that USAI is entitled to judgment as a matter of law, we *affirm*.

## DISCUSSION

Summary judgment is a question of law that the appellate court reviews *de novo*. *See Conroy v. Reebok Int'l Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed. Cir.1994). A court may grant summary judgment only if the case presents no gen-

uine issue of material fact and the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c).* "In other words, summary judgment is appropriately granted in favor of the moving party when 'no reasonable jury could return a verdict for the nonmoving party.'" *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1196, 32 USPQ2d 1338, 1340 (Fed.Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all facts in the light most favorable to the non-moving party, and it must resolve all doubts in that party's favor. *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1379, 58 USPQ2d 1286, 1287 (Fed.Cir. 2001); *Helifix Ltd. v. Blok–Lok, Ltd.*, 208 F.3d 1339, 1345–46, 54 USPQ2d 1299, 1303 (Fed.Cir.2000). The moving party bears the burden of demonstrating the absence of material fact. *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1310, 7 USPQ2d 1881, 1884 (Fed.Cir.1988).

Claim construction is also a question of law that this court reviews *de novo*. *Bell Atl. Network Servs. v. Communications Group, Inc.*, 262 F.3d 1258, 1267, 59 USPQ2d 1865, 1869 (Fed.Cir.2001); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Biovail Corp. Intern. v. Andrx Pharm., Inc.*, 239 F.3d 1297, 1300, 57 USPQ2d 1813, 1815 (Fed.Cir.2001).

## CLAIM 1

IGC is the assignee of U.S. *Patent No. 5,361,765* ("the '765 patent"). At issue in the present case are independent claims 1 and 5. With respect to claim 1, IGC argues that the district court erred when it

construed the claim limitation "at least one diametric conductor" to refer to a segment connecting two sides of a coil through its center. According to IGC, the limitation "diametric conductor" encompasses any structure that divides a coil into two loops and thereby enables electric current to flow around the coil in opposite directions. Appellant asserts that the district court impermissibly focused on the definition of "diametric" in the sense of "diameter of a circle" rather than acknowledging that the word could also denote "diametrically opposed." In IGC's view, the district court's construction impermissibly imported limitations from the preferred embodiment and the prosecution history into the claim and erroneously led the court to conclude that USAI's devices do not literally infringe the '765 patent. Additionally, Appellant argues that the district court improperly held that the doctrine of equivalents requires the presence of each literal claim element in the accused device.

USAI responds that the district court properly interpreted the term "diametric conductor" to refer to a segment that bisects a loop coil through its center. Appellee argues that because its coils lack this element, the court correctly determined that the accused devices do not literally infringe the '765 patent as a matter of law. Additionally, USAI asserts that the court properly concluded that there is no infringement under the doctrine of equivalents because USAI's figure eight coils lack a corresponding equivalent for the claimed diametric conductor.

■ We agree with USAI that the district court properly granted summary judgment that USAI's devices do not infringe the '765 patent. Further, we agree that the district court construed claim 1 correctly. In construing patent claims, we look first to the intrinsic evidence of record—the claims, the specification, and, if in evidence, the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). Claim 1, in relevant part, is directed to a "second coil having at least one diametric conductor to divide the second coil into a pair of loops...." The claim is therefore limited to devices that have one or more diametric conductors. The plain language of the claim suggests that such a conductor is a single segment dividing a coil into two loops at its center. As claim 1 states, the diametric conductor exists "to divide the second coil into a pair of loops ...." '765 patent, col. 9, II. 33–34. On appeal, IGC attempts to alter the meaning of this plain language by arguing that the term "at least one diametric conductor" includes anything that bisects a coil into two loops in order to allow for counter-cyclic current flow. The claim language, however, is not directed to current flow, and IGC's argument is without merit.

As the district court correctly found, the specification also supports the construction of "diametric conductor" as a segment that bifurcates a coil at its center. *IGC–Medical* at 10. The Summary of the Invention states that "[a] second loop, opposed substantially symmetrically to the first loop about the imaging volume, *has a diametric conductor to divide it into a pair of coils.*" '765 patent, col. 3, II. 36–39 (emphasis added). Figures 3, 5, and 7 of the patent disclose coils with precisely this configuration: all three figures show two loops, one of which is divided by a straight line running through the middle. Finally, the Detailed Description of the Preferred Embodiment describes the diametric conductor as a "simple straight segment" between the segments of the loop coil. *Id.* at col. 9, I. 6. On appeal, IGC argues that this analysis impermissibly limits claim 1 to its preferred embodiment. Although "[r]efer-

ences to a preferred embodiment, such as those often present in a specification, are not claim limitations," *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865, 9 USPQ2d 1289, 1299 (Fed.Cir.1988), this court has repeatedly held that a claim must be read in light of the specification. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116, 1 USPQ2d 1563, 1566 (Fed.Cir.1987) ("Claims are not interpreted in a vacuum, but are part of and are read in light of the specification."). We therefore conclude that claim 1 should be interpreted to cover only coil pairs where the second coil is bisected by at least one segment running through its center.

If ambiguity remains after consideration of the intrinsic evidence, "extrinsic evidence may also be considered, if needed to assist in determining the meaning or scope of technical terms in the claims." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216, 36 USPQ2d 1225, 1228 (Fed. Cir.1995). In the instant case, we view the intrinsic evidence regarding diametric conductors as unambiguous and consequently need not discuss the extrinsic evidence.

■ Turning to the accused device, it is clear that USAI's figure eight coils are not bisected at the center by at least one segment. Rather, Appellee's coils are composed of a single loop twisted in two. Electrical current travels around the coil in one continuous path, and no conductor runs between the two sides of the loop. *IGC–Medical* at 11. As we have construed claim 1 to encompass only those coil pairs where the second coil is bifurcated by such a diametric conductor, we hold that as a matter of law no reasonable fact-finder could conclude that USAI's devices literally infringe claim 1.

IGC argues that the district court erred when it described the claim limitation as "a diametric conductor" rather than "at least one diametric conductor." *IGC–Medical*

at 9, 13. The court was clearly aware of claim 1's exact language, however, and it explicitly stated that claim 1 "requir[es] *a 'diametric conductor'*: 'the second coil having *at least one diametric conductor* to divide the second coil into a pair of loops.' " *IGC–Medical* at 9 (emphases added). Appellant also argues that the district court erroneously limited claim 1 to circular coils when it held that the term "diametric conductor" refers to a conductor "crossing the center of a circle." *Id.* at 9. While the district court did refer to a circle, we note that it also found the plain meaning of "diametric conductor" to be "a conductor across the diameter of *a loop coil.*" *Id.* (emphasis added). The court correctly construed the claim limitation to encompass coils in general and did not restrict claim 1 as asserted by IGC. We therefore affirm the district court's grant of summary judgment on the claim.

■ We also affirm the district court's decision that Appellee's devices do not infringe claim 1 of the '765 patent under the doctrine of equivalents. IGC argues that USAI's figure eight configuration is substantially equivalent to Appellant's diametric conductor because the two perform substantially the same function in the same way in order to achieve the same result. As the district court correctly observed, however, to find IGC's and Appellee's devices equivalent "would be to broaden [claim 1] to 'a second coil comprising a pair of loops having a second reception pattern,' effectively eliminating the structural element of 'a diametric conductor to divide the second coil.' " *IGC–Medical* at 12–13. A patentee may not use the doctrine of equivalents to vitiate a claim element in this way. As this court has held, "[t]he doctrine of equivalents cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in

avoiding infringement.'" *Conopco, Inc. v. May Dept. Stores Co.,* 46 F.3d 1556, 1562, 32 USPQ2d 1225, 1228 (Fed.Cir.1994) (quoting *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 935, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (*en banc*)) (internal citations omitted).

## CLAIM 5

With respect to claim 5, IGC argues that the court erroneously construed the claim limitation "arched support" to require a rigid structure. According to Appellant, this construction erroneously reads the term "rigid" into the claim and ignores the fact that the device described by the '765 patent must possess some flexibility in order to accommodate patients of different sizes. IGC asserts, however, that even under the district court's erroneous construction, USAI's devices literally infringe the '765 patent because Appellee's coil systems assume an arched shape during use. Appellant characterizes this as "part-time infringement" and argues that one may not avoid infringement by creating an infringing device capable of being used in a noninfringing fashion.

USAI responds that the plain meaning of "arched support" and the term's use in the specification reveal that the claim limitation requires a structure that maintains a rigid arched shape. Appellee asserts that IGC failed to offer a doctrine of equivalents argument below and that Appellant consequently waived this argument on appeal. As such, USAI argues that the district court was correct as a matter of law in both its construction and finding of noninfringement.

■ We agree with USAI that the district court properly construed claim 5 and granted summary judgment of noninfringement in its favor. Claim 5 is directed to a system of arched supports that hold the local coils in place. '765 patent, col. 10,

II. 9–29. Straps running between the supports draw the two surfaces towards each other and around the patient. *Id.* The plain language of claim 5 suggests that the claim is limited to those supports that maintain a fixed curved shape. The claim describes two "arched support[s]" that have "surface[s] concave about" the arch axes and which cause the local coils to "conform substantially" to the concave surfaces. *Id.* This language's emphasis on concave supports capable of guiding the coils into an arched shape clearly contemplates a fixed structure that retains its curve independent of its placement around a patient. Additionally, the claim goes on to state that "the first and second concave surfaces serve to support and align the first and second coils against the patient...." *Id.* This limitation further reinforces the conclusion that the supports are arched prior to being placed over the patient and that their fixed convex shape is essential for the device to function properly.

The specification supports this construction of claim 5. Like the claim itself, the Summary of the Invention refers to arched supports, concave surfaces, and the fact that "the first and second concave surfaces serve to support and align the first and second loops against the patient...." *Id.* col. 3, II. 48–57. Additionally, the Detailed Description of the Preferred Embodiment refers repeatedly to the arched supports as "hemicylindrical shell[s]." *See id.* col. 8, II. 17–56. And as the district court noted, Figure 4 shows precisely this sort of fixed, shell-like structure. *Id.* at 1.

As for IGC's assertion that the term "rigid" never appears in the claim and that the '765 device must necessarily be somewhat flexible in order to adapt to both small and large patients, we note that the device's flexibility is provided by the straps that pull the arched supports to-

gether rather than by the supports themselves. As claim 5 itself states, these straps "draw the arched supports toward each other about the patient *to one of a plurality of separation distances determined by a patient size* . . . ." *Id.* at col. 10, ll. 21–24 (emphasis added). Appellant's argument that the claim must be interpreted to cover any kind of flexible coil support is therefore without merit. We conclude that claim 5 should be construed to include only those supports that maintain a fixed arcuate shape. As with claim 1, we find the intrinsic evidence to be unambiguous and consequently need not discuss extrinsic evidence.

■ Turning to the question of literal infringement, it is clear that the accused devices do not maintain a fixed arched shape when not in use. As plaintiff concedes, the devices are very similar to bamboo mats: their supple, flexible structure allows them to assume the shape of any surface upon which they are placed. *IGC–Medical* at 15. As we have construed claim 5 to encompass only arched supports that remain fixedly arched, we conclude that as a matter of law, no reasonable fact-finder could find that USAI's devices literally infringe claim 5.

IGC argues that the accused devices literally infringe the '765 patent because they assume an arched shape during use. According to Appellant, USAI's coil supports cannot avoid infringement simply because they can be used in a noninfringing fashion. This argument fundamentally misconstrues the test for literal infringement. A claim is literally infringed if each properly construed claim element reads on the accused product. *Jeneric/Pentron Inc. v. Dillon Co.,* 205 F.3d 1377, 1382, 54 USPQ2d 1086, 1090 (Fed.Cir.2000). Because we have construed claim 5 to cover only those arch supports that maintain a fixed arched shape, and because USAI's accused devices do not maintain such a shape, they do not literally infringe the '765 patent. Appellant's part-time infringement argument is consequently without merit.

As for infringement under the doctrine of equivalents, Appellant conceded at oral argument that it did not raise this issue below. We therefore conclude that IGC waived its doctrine of equivalents argument for claim 5. *See In re Marvin Props., Inc.,* 854 F.2d 1183, 1187 (9th Cir.1988) ("An appellate court will decline to review an issue not properly raised below unless it is necessary to prevent a manifest injustice."). Alternatively, IGC also conceded that the record contains no evidence that USAI's devices possess equivalents for the '765 patent's arched supports. The law is clear that summary judgment must be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). IGC failed to make such a showing, and we consequently affirm the district court.

Because the district court did not err in its conclusion that USAI's devices do not infringe the '765 patent as a matter of law, we affirm its grant of USAI's motion for summary judgment of noninfringement.